DECISION
Plaintiffs appeal Defendant's classification and the Hood River County Board of Property Tax Appeals Order determining the 2009-10[1] real market value of their property identified as Account 13878 (subject property). A telephone trial was held by Magistrate Jeffrey Mattson on June 30, 2010. William H. Sumerfield (Sumerfield), Attorney at Law, appeared on behalf of Plaintiffs after the telephone proceeding and submitted supplemental information. Plaintiffs testified on their own behalf. Duane Ely (Ely), Chief Appraiser, Hood River County Department of Records and Assessment, appeared and testified on behalf of Defendant.
Plaintiffs' Exhibits 1 through 26 were admitted without objection.
 I. STATEMENT OF FACTS
The subject property is described as a "townhome property" with "a 2,000 square foot second floor main living unit with a 700 foot first floor unit below which can be used for commercial purposes." (Ltr from Ptfs' attorney at 1, dated Aug 3, 2010.) Plaintiffs testified that they live in one-half of the subject property. They testified that the subject property was "financed" as a residence. Plaintiffs submitted an appraisal report dated January 24, 2007, *Page 2 
stating an indicated value of $495,000 as of January 24, 2007. (Ptfs' Ex 12.) When listing the subject property for sale in February, 2009, Plaintiffs testified that they advertised the property as "living area." Plaintiffs testified that approximately 75 percent of the subject property is "residential" and the remaining "25 percent" they define as "flex," with the "potential for commercial use." Plaintiffs testified that their listing price was $385,000, which they consider the "ceiling price." (Ptfs' Ex 3.) Ely agreed that Plaintiffs' "listing price" is often a "ceiling price." Plaintiff (Kathy Lynn Roberge), who is a real estate agent, testified that from September, 2008, to December, 2009, reported sales of residential property in the Columbia Gorge area dropped eight percent. (Ptfs' Ex 14.) She testified that in 11 months from January, 2009, to November, 2009, there was an "18 percent price reduction" for a property similar to the subject property. (Ptfs' Exs 15, 16.) Plaintiffs believe that the subject property's real market value as of the assessment date was $365,000. In their letter to the court dated August 3, 2010, Plaintiffs request that the subject property's real market value be reduced to match the "identical structure" located next door; Plaintiffs write that the real market value of that property is $365,000. (Ptfs' ltr at 1, Aug 3, 2010.)
Ely presented no evidence of the subject property's real market value as of the date of assessment. He requested that the Hood River County Board of Property Tax Appeals Order be affirmed, setting the subject property's 2009-10 real market value at $385,000.
Plaintiffs testified that they are seeking relief from the "extreme classification mess" that makes the subject property "unmarketable when compared to other similar properties in town and in any economy." (Id.) Plaintiffs wrote:
 "We tried appealing this the first time around, along with our neighbor. We were told * * * our townhome * * * had to be taxed at a commercial rate. * * * We heard this repeatedly: from Tim Donahue, on Board of Appeals, Kim Haack at the county assessment and Mr. Ely. We were told the mixed use townhome could not *Page 3 
be separated * * *. Not being * * * attorney[s][,] we felt we could not fight any further. Recently, we had discovered by accident looking at a property on 720 Columbia St and the way it is advertised and marketed at this time that indeed there is a class that our property fits into. It is a 1-2-1 mixed use classification. This is the actual use of the townhome and the lower multiplier would be in line with the small amount of rent we receive for the first floor space. Our neighbor has not used his 700 sq ft ground floor space commercially and only used it for personal storage area."
(Id. at 2.) To support their classification request, Plaintiffs cited electronic mail communication with "local building inspectors," and the use of residential comparables in John Lamar's appraisal report. (Id.) Plaintiffs wrote:
 "`Highest and best use' is defined in OAR 150-308.205-A(1)(e) and (2)(i). OAR 150-308.215 (1)-(A) requires the assessor to correctly classify each property according to its highest and best use. Note sub-section 7(d)(A) provides that mixed use property is to be assigned a classification `based on the use that contributes the most to the real estate market value on the current assessment date.'"
(Id. at 3-4.) In his letter dated August 3, 2010, Plaintiffs' attorney, Sumerfield, wrote that he believes the subject property's "classification is in error under the applicable law, and that the mis-classification is a clerical error which may be corrected in this appeal." (Ltr from Ptfs' Attorney at 1, Aug 3, 2010.) Sumerfield cites and quotes ORS 311.205 and OAR 150-311.205(1)(b)-(C)(1) in support of his conclusion that the court can "correct a clerical error." (Id. at 2) He states that his "clients seek a ruling directing the assessor to properly classify my clients' property as residential." (Id. at 3)
 II. ANALYSIS
One of the two issues before the court is the 2009-10 real market value of Plaintiffs' property. "Real market value is the standard used throughout the ad valorem statutes except for special assessments."See Richardson v. Clackamas County Assessor, TC-MD No 020869D, WL 21263620, at *2 (Mar 26, 2003) (citing Gangle v. Dept. ofRev., 13 OTR 343, 345 (1995)). *Page 4 
Real market value is defined in ORS 308.205(1), [2] which reads:
 "Real market value of all property, real and personal, means the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's length transaction occurring as of the assessment date for the tax year."
A. Approaches of Valuation — Real Market Value
There are three approaches of valuation (cost, income, and comparable sales) that must be considered in determining the real market value of a property even if one of the approaches is found to not be applicable. See ORS 308.205(2) and OAR 150-308.205-(A)(2).
In a case such as the one before the court, the comparable sales approach "may be used to value improved properties, vacant land, or land being considered as though vacant." Chambers Management Corp andMcKenzie River Motors v. Lane County Assessor, TC-MD No 060354D, WL 1068455 at *3 (Apr 3, 2007) (citing Appraisal Institute, The Appraisalof Real Estate 335 (12th ed 2001)). ORS 308.205(2) provides in pertinent part that "[r]eal market value in all cases shall be determined by methods and procedures in accordance with rules adopted by the Department of Revenue[.]" The Department of Revenue adopted OAR 150-308.205-(A)(2)(c), which states in part that:
 "In utilizing the sales comparison approach only actual market transactions of property comparable to the subject, or adjusted to be comparable, will be used. All transactions utilized in the sales comparison approach must be verified to ensure they reflect arms-length market transactions."
Plaintiffs did not submit an appraisal report nor did they present any evidence of value using one of the three statutory approaches of valuation.
"In all proceedings before the judge or a magistrate of the tax court and upon appeal therefrom, a preponderance of the evidence shall suffice to sustain the burden of proof. The *Page 5 
burden of proof shall fall upon the party seeking affirmative relief * * *." ORS 305.427 (2009). Plaintiff must establish her claim "by a preponderance of the evidence, or the more convincing or greater weight of evidence." Schaefer v. Dept. of Rev., TC No 4530, WL 914208 at *2 (July 12, 2001) (citing Feves v. Dept. of Revenue,4 OTR 302 (1971).
Plaintiffs failed to carry the burden of proof. Plaintiffs did not submit an appraisal report prepared as of the date of assessment. The appraisal that Plaintiffs did submit was prepared approximately two years prior to the assessment date and is not a good indicator of the subject property's 2009-10 real market value. Plaintiffs relied on their listing price, adjusted for a prior year reduction in sale prices for property located in a wide area of the county rather than their neighborhood and for similar properties. A listing price is not a reliable indicator of a property's real market value in an arm's length transaction between a willing buyer and willing seller. The issue before the court was the subject property's real market value. Plaintiffs' evidence of the real market value of the subject property as of the assessment date, January 1, 2009, was not based on one of the three statutory valuation approaches.
B. Classification
The second issue before the court is the proper classification of the subject property. "`Property class' means the classification of property adopted by the Department of Revenue by rule[.]" ORS 308.149(1). Plaintiffs request that the subject property be assigned a mixed use classification, specifically 1-2-1. There is no evidence disputing Plaintiffs' evidence that the subject property is used as their residence. The subject property is located in an area zoned commercial, allowing Plaintiffs to use the street accessible portion of their property for a commercial use. Currently, Plaintiffs do not use that portion of the subject property for a *Page 6 
commercial use. Defendant presented no evidence to rebut Plaintiffs' evidence in support of their request that the subject property be designated a mixed use classification.
Plaintiffs request that the court grant their change in classification for tax years 2007-08, 2008-09 and 2009-10. Tax year 2009-10 is properly before the court and the court grants Plaintiffs' request that the subject property's classification be changed to a mixed use classification (1-2-1) for tax year 2009-10.
Tax year 2008-09 was dismissed in the court's Preliminary Ruling, filed April 29, 2010. The court's Preliminary Ruling focused on Plaintiffs' failure to file a timely valuation appeal to the Hood River County Board of Property Tax Appeals. Plaintiffs testified that when they sought a change in classification, at least three "authorized tax officials" told them that there was one and only one classification for the subject property. There was no evidence to the contrary. ORS 305.288(3) allows the tax court to order a change or correction to the subject property's classification if there exists "good and sufficient cause" to do so. "Good and sufficient cause" is defined in ORS 305.288(5)(b) as:
 "(A) Means an extraordinary circumstance that is beyond the control of the taxpayer, * * * and that causes the taxpayer, * * * to fail to pursue the statutory right of appeal; and
 "(B) Does not include inadvertence, oversight, lack of knowledge, hardship or reliance on misleading information provided by any person except an authorized tax official providing the relevant misleading information."
The court concludes that Plaintiffs had "good and sufficient cause" for failing to file a petition for local review after receiving misleading and incorrect information from authorized tax officials. Because the court did not consider Plaintiffs' "good and sufficient cause" argument for failing to appeal the subject property's classification when it issued its Preliminary Ruling, that ruling is vacated. The court concludes that the 2008-09 tax year is properly before the court and *Page 7 
the court grants Plaintiffs' request that the subject property's classification be changed to mixed use (1-2-1) for tax year 2008-09.
Plaintiffs' complaint did not include an appeal of tax year 2007-08. Plaintiffs have never properly put that tax year before the court. Because that tax year is not properly before the court, Plaintiffs' request to change the subject property's classification for tax year 2007-08 is moot.
Plaintiffs' attorney states that the court has the authority to correct a clerical error, citing ORS 311.205. ORS 311.205(1)(a) states in pertinent part:
 "After the assessor certifies the assessment and tax roll to the tax collector, the officer in charge of the roll may correct errors or omissions in the roll to confirm to the facts, as follows: * * * ."
This court is not "the officer in charge" of the property tax roll and the court may not "correct errors or omissions in the roll" unless the statutory requirements are met. ORS 311.205(1) and (1)(d) permit "the officer in charge of the roll" to make changes "ordered by the tax court * * * under ORS 305.288(1) to (6) * * *." For tax years 2008-09 and 2009-10, the court has the authority to order changes and "the officer in charge of the roll" can make the ordered changes.
 III. CONCLUSION
After careful consideration of the evidence and testimony, the court concludes that Plaintiffs failed to carry their burden of proof with respect to their requested 2009-10 real market value. The court concludes that the subject property's classification should be changed to mixed use, specifically 1-2-1, for tax years 2008-09 and 2009-10. Now, therefore,
IT IS THE DECISION OF THIS COURT that Plaintiffs' appeal of the subject property's 2009-10 real market value is dismissed;
IT IS FURTHER DECIDED that Plaintiffs' request that the subject property's classification for tax years 2008-09 and 2009-10 be changed to mixed use (1-2-1) is granted; and *Page 8 
IT IS FURTHER DECIDED that Plaintiffs' request that the subject property's classification for tax year 2007-08 is not properly before the court.
Dated this ___ day of March 2011.
If you want to appeal this Decision, file a Complaint in theRegular Division of the Oregon Tax Court, by mailing to:1163 State Street, Salem, OR 97301-2563; or by hand delivery to:Fourth Floor, 1241 State Street, Salem, OR.
 Your Complaint must be submitted within 60 days after the date ofthe Decision or this Decision becomes final and cannot be changed.
 This document was signed by Presiding Magistrate Jill A. Tanneron March 29, 2011. The Court filed and entered this documenton March 29, 2011.
[1] In a Preliminary Ruling, filed April 29, 2010, Magistrate Mattson dismissed Plaintiffs' appeal for tax year 2008-09.
[2] Unless otherwise noted, all references to the Oregon Revised Statutes (ORS) are to 2007.